Dawn Michelle **GOODSON**, individually, and as parent and guardian and next friend of Brittany Weber and Austin Weber, minors, Petitioner,

v.

**AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,** Respondent.

No. 02SC388.

Supreme Court of Colorado, En Banc.

May 3, 2004.

**412**

William Muhr, David A. Harper, Colorado Springs, Colorado, Attorneys for Petitioner.

A. Peter Gregory, Rebecca K. Wagner, Englewood, Colorado, Attorneys for Respondent.

Thomas L. Roberts, Bradley A. Levin, Denver, Colorado, Attorneys for Amicus Curiae, Colorado Trial Lawyers Association.

Justice HOBBS delivered the opinion of the court.

We granted certiorari in this case to review the court of appeals' decision in *Goodson v. American Standard Insurance Co. of Wisconsin*, No. 00CA1489, 2002 WL 1803756 (Colo.App. Mar.7, 2002).[1] The court of appeals reversed the trial court's judgment entered on the jury verdict in favor of the insured. It held that the insurer defending against a bad faith tort suit was entitled to an instruction that the insured must establish substantial property or economic loss as a prerequisite to recovering damages for emotional distress.

We disagree with the court of appeals and reverse. We hold that, in a tort claim against an insurer for breach of the duty of good faith and fair dealing, the plaintiff may recover damages for emotional distress without proving substantial property or economic loss. To the extent this holding conflicts with the court of appeals' decision in *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Colo.App.1988) ("*Trimble III*"), we overrule that decision.

**I.**

In May, 1995, Dawn Goodson and her two minor children were involved in an automobile accident. They were stopped at a red light when a vehicle struck them from behind. Chet Weber owned the vehicle that Goodson was driving at the time of the accident. Weber gave Goodson authorization to drive his vehicle. Weber was a named insured of American Standard Insurance Company of Wisconsin ("American Standard"). Goodson timely notified American Standard of the collision.

Goodson delayed seeking medical treatment for herself and her children for over a year because she was concerned about the cost of medical bills and was unaware of the personal injury protection ("PIP") benefits available under Weber's policy. In July, 1996, Goodson and her children began receiving chiropractic treatment for their injuries. Around that time, Goodson learned of the possibility of receiving PIP benefits and submitted to American Standard an application for PIP benefits. Around October, 1996, Goodson submitted her outstanding chiropractic bills to American Standard for payment.

American Standard disputed Goodson's claim from the outset. First, American Standard took the position that the PIP benefits under Weber's policy were subject to reduction because Goodson and her children received treatment from a provider that was not a member of American Standard's preferred provider organization ("PPO"). Second, around October 1996, American Standard claimed that Weber's policy was ineffective at the time of the accident because he failed to pay the premium. Third, in December, 1997, American Standard agreed that the policy was effective at the time of the collision, but asked Goodson and her children to undergo an independent medical evaluation ("IME") to determine whether their injuries were related to the accident and whether their medical treatment was reasonable and necessary. In April 1998, American Standard finally paid

---

1. We granted certiorari on the following issue:
 1. Whether emotional distress damages in bad faith cases can only be awarded upon

a showing of "substantial property or economic loss."

the full amount of the outstanding medical bills, which totaled slightly over $8,000.

In July, 1998, Goodson filed suit against American Standard, alleging the following claims: breach of contract; bad faith breach of insurance contract; outrageous conduct; and willful and wanton breach of insurance contract and exemplary damages.[2] During the trial, American Standard reasserted its position that the policy had been cancelled for non-payment of the premium and threatened to recover the benefits Goodson received.

The case was submitted to the jury solely on the tort claim of bad faith breach of insurance contract. American Standard requested an instruction requiring the jury to find substantial property or economic loss as a prerequisite to an award of emotional distress damages. The trial court refused to give the instruction, reasoning that if such an instruction were required,

> [I]nsurance companies would understand that they can fiddle around and put the insured through all sorts of hoops and problems and difficulties ... and then at the last minute, the insurer can pay the bills ... and eliminate damages for emotional distress, and the whole idea of bad faith handling of insurance cases goes out the window.

The trial court instructed the jury to consider "any non-economic losses or injuries which Plaintiffs have had or will have in the future including: pain and suffering; inconvenience; emotional distress; and impairment of quality of life." The trial court also instructed the jury to award punitive damages if it found beyond a reasonable doubt that American

Standard acted in a willful and wanton manner.

The jury returned a general verdict against American Standard, awarding Goodson and her children $75,000 in actual damages. Moreover, the jury found beyond a reasonable doubt that American Standard's breach was willful and wanton, and awarded $75,000 in punitive damages. The trial court entered judgment on the jury verdict.

American Standard appealed the judgment, claiming that: (1) the trial court erred in refusing to instruct the jury that it could award damages for emotional distress only if Goodson showed substantial property loss or economic damages caused by American Standard's breach; and (2) the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. Goodson filed a cross-appeal, claiming that: (1) the trial court erred in denying her motion to increase the exemplary damages awarded by the jury to three times the actual damages; and (2) the trial court erred in determining the date for accrual of prejudgment interest as part of Goodson's bill of costs.

The court of appeals reversed the trial court on the issue of the jury instruction, holding that the trial court erred in refusing to instruct the jury that it could only award damages for emotional distress if Goodson showed substantial property loss or economic damages caused by American Standard's breach.[3] In reaching its decision, the court of appeals relied on *Trimble III*, 768 P.2d 1243 (Colo.App.1988), which held that in order to reduce the threat of fictitious claims, damages for emotional distress can only be recovered in an action for bad faith breach of

---

**2.** Insureds can plead multiple alternative claims against insurers, including but not limited to the following: a contract action for ordinary and/or willful breach of the insurance contract; a tort action for bad faith breach of the insurance contract; outrageous conduct; fraud, misrepresentation, or deceit; civil conspiracy; and prior to July 1, 2003, violation of the No–Fault Act, §§ 10–4–701 to –725, 3 C.R.S. (2002) (repealed effective July 1, 2003).

**3.** The court of appeals addressed the remaining issues as follows: (1) American Standard's appeal regarding its motions for a directed verdict and judgment notwithstanding the verdict were

moot because American Standard claimed that the evidence of emotional distress was insufficient to support the verdict, but the question of damages would be reconsidered on remand; (2) Goodson's appeal regarding her motion to increase the exemplary damages awarded by the jury to three times the actual damages was moot because the damages award would be reconsidered on remand; and (3) Goodson's appeal regarding the accrual date for prejudgment interest was without merit because the decision to award costs is within the trial court's sound discretion, which the trial court did not abuse in reaching its decision.

insurance contract "when the emotional distress results from substantial property or economic loss proximately caused by the insurer's tortious conduct." The court of appeals remanded the case for a new trial solely on the issue of damages.

## II.

We disagree with the court of appeals and reverse. We hold that, in a tort claim against an insurer for breach of the duty of good faith and fair dealing, the plaintiff may recover damages for emotional distress without proving substantial property or economic loss.

### A. Bad Faith Breach of Insurance Contract

Whether emotional distress damages in bad faith cases can only be awarded upon a showing of substantial property or economic loss is a question of law; accordingly, we review this question de novo. *Mortgage Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1183 (Colo.2003).

Every contract in Colorado contains an implied duty of good faith and fair dealing. *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo.2003). In most contractual relationships, a breach of this duty will only result in damages for breach of contract and will not give rise to tort liability. *Id.* at 466.

But, insurance contracts are unlike ordinary bilateral contracts. *Id.; Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo. 1998). First, the motivation for entering into an insurance contract is different. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984) ("*Trimble II*"). Insureds enter into insurance contracts for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind, rather than to secure commercial advantage. *Cary*, 68 P.3d at 467; *Trimble II*, 691 P.2d at 1141. Second, there is a disparity of bargaining power between the insurer and the insured; because the insured cannot obtain materially different coverage else-

where, insurance policies are generally not the result of bargaining. *Huizar*, 952 P.2d at 344.

Due to the "special nature of the insurance contract and the relationship which exists between the insurer and the insured," an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort. *Cary*, 68 P.3d at 466 (citing *Trimble II*, 691 P.2d at 1141). The basis for tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability. *Trimble II*, 691 P.2d at 1142. Therefore, the fact that an insurer eventually pays an insured's claims will not prevent the insured from filing suit against the insurer based on its conduct prior to the time of payment.

Claims for bad faith breach of insurance contract arise in first-party and third-party contexts. First-party bad faith cases involve an insurance company refusing to make or delaying payments owed directly to its insured under a first-party policy such as life, health, disability, property, fire, or no-fault auto insurance. *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 421 (Colo.1991); John H. Bauman, *Emotional Distress Damages and the Tort of Insurance Bad Faith*, 46 Drake L.Rev. 717, 739 (1998). The insurer's actions expose the insured to being personally liable for the monetary obligations underlying the insured's claims.[4]

Third-party bad faith arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy. *Williams*, 805 P.2d at 421; Bauman, *supra*, at 746–47. The insurance company's duty of good faith and fair dealing extends only to the insured, not to the third-party. *Lazar v. Riggs*, 79 P.3d 105, 107 (Colo.2003). In the third-party context, an insurance company stands in a position of trust with regard to its insured; a quasi-fiduciary relationship exists between the in-

---

4. The present case involves a first-party claim because Goodson and her children are "in-

sureds" pursuant to the language of the policy that she seeks to enforce.

surer and the insured. *Trimble II*, 691 P.2d at 1141.[5]

### B. Establishing Liability

 An insurer's liability for bad faith breach of insurance contract depends on whether its conduct was appropriate under the circumstances. *Trimble II*, 691 P.2d at 1142; Bauman, supra, at 739. Because of the quasi-fiduciary nature of the insurance relationship in a third-party context, the standard of conduct required of the insurer is characterized by general principles of negligence. *Trimble II*, 691 P.2d at 1142. To establish that the insurer breached its duties of good faith and fair dealing, the insured must show that a reasonable insurer under the circumstances would have paid or otherwise settled the third-party claim. *Trimble II*, 691 P.2d at 1142.

 In a first-party context, where the insured has not ceded to the insurer the right to represent his or her interests, there is no quasi-fiduciary duty. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo.1985). Therefore, the standard of conduct is different. In addition to proving that the insurer acted unreasonably under the circumstances, a first-party claimant must prove that the insurer either knowingly or recklessly disregarded the validity of the insured's claim. *Id.* at 1275. This standard of care "reflects a reasonable balance between the right of an insurance carrier to reject a non-compensable claim submitted by its insured and the obligation of such carrier to investigate and ultimately approve a valid claim." *Id.*

 The reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards. *Id.* The aid of expert witnesses is often required in order to establish objective evidence of industry standards. *See Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 81 (Colo.2001) (stating that in most cases of professional negligence the applicable standard must be established by expert testimony because it is not within the common knowledge and experience of ordinary persons).

### C. Establishing Damages

 An insured can recover damages for bad faith breach of insurance contract based on traditional tort principles. *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996). Compensatory damages for economic and non-economic losses are available to make the insured whole and, where appropriate, punitive damages are available to punish the insurer and deter wrongful conduct by other insurers. *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 (Colo.1994); Restatement (Second) of Torts §§ 901–909 (1979). Non-economic losses recognized under the rubric of compensatory damages include emotional distress; pain and suffering; inconvenience; fear and anxiety; and impairment of the quality of life. *See* § 13–21–102.5(2)(b), 5 C.R.S. (2003) (defining non-economic losses); *Ballow*, 878 P.2d at 677 ("an insured suing under the tort of bad faith breach of an insurance contract is entitled to recover damages based upon traditional tort principles of compensation for injuries actually suffered, including emotional distress."); Restatement (Second) of Torts § 905 (1979).

 To recover punitive damages, the insured must establish that the insurer's breach was accompanied by circumstances of fraud, malice, or willful and wanton conduct. § 13–21–102(1)(a), 5 C.R.S. (2003); *Lira*, 913 P.2d at 517. A punitive damages award cannot exceed the amount of actual damages and, in certain situations, may be increased or decreased by the court. § 13–21–102(1)–(3), 5 C.R.S. (2003).

Insureds have the burden of proving each element of a claim for bad faith breach of insurance contract, including damages, by a preponderance of the evidence. § 13–25–127(1), 5 C.R.S. (2003) (degree of proof required for civil actions); *Kopeikin v. Merchants Mortg. and Trust Corp.*, 679 P.2d 599, 601 (Colo.1984); CJI–Civ. 4th 25:2. Punitive damages require a higher burden of proof and require insureds to establish the requi-

---

**5.** We address both first and third-party claims in this opinion because the case the court of appeals relied on in this case, *Trimble III*, involved a third-party claim and because our holding in this case applies equally to both types of claims.

site attendant circumstances beyond a reasonable doubt. § 13–25–127(2), 5 C.R.S. (2003).

### D. Award of Emotional Distress Damages in this Case

■■■ The question of whether a substantial property or economic loss should be a prerequisite for recovery of emotional distress damages in bad faith breach of insurance contract claims is one of first impression by our court. We begin by discussing *Trimble III,* upon which the court of appeals relied for its decision in this case. We then proceed to disapprove of the economic loss rule expressed in that decision.

### 1. *Trimble III*

The court of appeals first imposed the substantial loss requirement in *Trimble III,* 768 P.2d 1243 (Colo.App.1988) (disapproved on other grounds by *Bernhard v. Farmers Ins. Exchange,* 915 P.2d 1285 (Colo.1996)). In *Trimble III,* the insured, Trimble, was facing several third-party personal injury claims. The insurer, Farmers Group, Inc. ("Farmers"), was required under Trimble's policy to provide for Trimble's legal defense in the event of a third-party claim. Farmers hired an attorney to defend Trimble, but during the third-party case, Farmers filed a declaratory judgment action against Trimble seeking determination that one of the third-party claims was not covered under Trimble's policy. As a result, Trimble was no longer able to discuss the third-party proceedings with the attorney retained by Farmers and was forced to hire a private attorney to defend him in the third-party suit. Trimble counterclaimed against Farmers, seeking reimbursement of the cost of hiring the private attorney. *Trimble II,* 691 P.2d 1138 (Colo.1984); *Trimble III,* 768 P.2d 1243 (Colo.App.1988); *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370 (Colo.App.1982) ("*Trimble I* ").

In *Trimble III,* the court of appeals upheld Trimble's award for compensatory damages, which included damages for emotional distress. *Trimble III,* 768 P.2d at 1247. The court held that emotional distress is recoverable as an element of damages in an action for bad faith breach of insurance contract when the emotional distress results from substantial property or economic loss proximately caused by the insurer's conduct. *Id.* at 1246. In reaching its holding, the court disagreed with the insurer's assertion that, as with claims for negligent infliction of emotional distress or intentional infliction of emotional distress, an award of damages for emotional distress in an action for bad faith breach of insurance contract must be predicated on proof of bodily harm or intent to cause severe emotional distress. *Id.* Instead, the court imposed the substantial loss requirement. *Id.* The court distinguished the tort of bad faith breach of insurance contract from the independent torts of intentional infliction of emotional distress and negligent infliction of emotional distress, stating that the substantial loss requirement would reduce the threat of fictitious claims sufficiently to obviate the need to borrow from the other torts. *Id.*

### 2. Goodson's Emotional Distress Damages

Our court first recognized the tort of bad faith breach of insurance contract in *Trimble II.* We held that a judgment in excess of policy limits was not a prerequisite to a claim of bad faith breach of insurance contract because "it is the affirmative act of the insurer in unreasonably refusing to pay a claim and failing to act in good faith, and not the condition of nonpayment, that forms the basis for liability in tort." *Trimble II,* 691 P.2d at 1142. Our emphasis on the insurer's conduct, rather than the insured's ultimate financial liability, stems from the special character of insurance contracts and the nature of the relationship between the insurer and the insured.

We have not limited the categories of damages available to insureds in bad faith breach of insurance contract claims. Rather, we have recognized that insureds are entitled to recover damages based on traditional tort principles, which includes damages for emotional distress. *See Lira,* 913 P.2d at 517; *Ballow,* 878 P.2d at 677. We recognize that it can be difficult to quantify and determine the credibility of non-economic injuries such

as emotional distress. However, our legal system contains numerous safeguards to mitigate this difficulty and protect against fictitious claims.

First, a statutory cap limits the amount of damages awards for non-economic injuries. § 13–21–102.5, 5 C.R.S. (2003). Second, the trial court can reduce damages awards that are excessive in light of the evidence. *See* C.R.C.P. 59; *Jagow v. E–470 Pub. Highway Auth.*, 49 P.3d 1151, 1157 (Colo.2002) (jury awards can be reduced if excessive and unjust). To this end, the insurer may request the use of special verdict forms to aid the trial court in assessing the appropriateness of the amount of damages awarded for emotional distress. Third, the jury system itself serves as a safeguard; we routinely entrust the jury with the important task of weighing the credibility of evidence and determining whether, in light of the evidence, plaintiffs have satisfied their burden of proof. With regard to claims for bad faith breach of insurance contract, the insured must prove damages by a preponderance of the evidence. § 13–25–127(1), 5 C.R.S. (2003); *Kopeikin*, 679 P.2d at 601; CJI–Civ. 4th 25:2.

■ These safeguards provide adequate protection against fictitious claims in the context of bad faith breach of insurance contract. Given that insureds purchase insurance policies to obtain financial security and peace of mind, emotional distress is a likely and foreseeable consequence of a bad faith denial of the benefits afforded under the contract. The action of the insurer causing anxiety, stress, inconvenience, and financial risk to the insured by delaying payment owed under the policy contravenes a fundamental benefit of obtaining the insurance.

In the case before us, on the emotional distress damages issue, the trial court did not deliver a substantial loss instruction because such a requirement would encourage insurance companies to delay payments owed. We agree with the trial court that an unreasonable denial of insurance benefits—a necessary element of every claim for bad faith breach of insurance contract—can cause anxiety, fear, stress, and uncertainty, even when the benefits are eventually paid.

Here, American Standard delayed the payment due under the policy for a year and a half after Goodson submitted her outstanding bills for payment. Goodson proved to the jury that she suffered emotional distress as a result of this delay. The anxiety, fear, stress, and uncertainty she experienced occurred as a result of her worry about whether she would be financially responsible for her medical bills, which American Standard refused to pay.

■ An insured purchases insurance in the first place so as not to suffer such anxiety, fear, stress, and uncertainty. The fact that an insurer finally pays in full does not erase the distress caused by the bad faith conduct. Damages for emotional distress the insured proves are therefore available in actions for bad faith breach of insurance contract upon the showing of the insurer's liability. To the extent this holding conflicts with the court of appeals' decision in *Trimble III,* we overrule that decision.

The trial court did not err in refusing to tender American Standard's requested instruction. The basis for the trial court's refusal reflects the same concerns that underlie our current holding—that the essence of the tort of bad faith breach of insurance contract is the insurer's conduct in unreasonably denying benefits.

Insureds such as Goodson should be able to proceed to the jury on all damages that flow from a breach of the duty of good faith and fair dealing. The court of appeals in *Trimble III* adopted the substantial loss rule to deter frivolous claims. However, the burden of proof the insured must carry on the issue of liability and damages is sufficient of itself to guard against frivolous claims. Here, American Standard's liability is not at issue, and the jury found that Goodson proved her economic distress damages. The trial court denied American Standard's motions for a directed verdict and a judgment notwithstanding the verdict on grounds that there was sufficient evidence for a reasonable jury to reach its damages verdict.

### III.

Accordingly, we reverse the court of appeals and remand the case to that court with

instructions to reinstate the trial court's judgment entered on the jury verdict and to consider any other remaining unaddressed issues raised on appeal to that court.

Justice COATS concurs in the judgment only.

Justice COATS, concurring in the judgment only.

While I do not suggest that the rationale of the court of appeals in *Trimble III*[1] applies of necessity to first-party, bad-faith-breach-of-contract claims, nor even that the majority's damages rule in this case transgresses any great principle of law, I can see no reason to gratuitously overturn an existing and eminently reasonable damage limitation in the third-party context that has governed the jurisdiction for more than fifteen years. I therefore concur only in the judgment of the court and not in its opinion.

After this court decided in *Trimble II*[2] that the breach of an insurance contract, unlike the breach of any other kind of contract, can give rise to a claim for damages in tort, the court of appeals addressed the question whether those damages can include emotional distress, and if so, upon what showing. Because this court held in *Trimble II*, 691 P.2d at 1142, that a "bad faith" breach (nomenclature notwithstanding) could be premised upon nothing more than unreasonable (negligent) withholding of payment by an insurer, the court of appeals compared it to the tort of negligent infliction of emotional distress, noting that the latter required a showing of bodily harm or a substantial risk of bodily harm. *See Trimble III*, 768 P.2d at 1245–46 (citing *Towns v. Anderson*, 195 Colo. 517, 579 P.2d 1163 (1978), adopting the approach of the Restatement Second of Torts). In seeking a justification for the recovery of damages for emotional distress in "bad faith" breach cases that would not completely ignore the danger of wholly fictitious claims, the court of appeals adopted the California approach, sanctioning recovery for emotional distress, but only upon a showing of substantial property or economic loss. *Id.* at 1246;

*see also Gruenberg v. Aetna Ins.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); *Crisci v. Security Ins.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967).

Whether or not a similar damage limitation might prove useful in the first-party context, there is admittedly nothing inherent in the rationale of *Trimble III* requiring it. Unlike negligence, the reckless disregard required for first-party claims in Colorado arguably aligns them more closely with claims for intentional infliction of emotional distress, in which the proof of intent itself provides the necessary protection against fictitious and superficial claims. In the absence, however, of any obligation to prove fault greater than negligence, proof of economic loss, or at least a substantial risk of economic loss, apart from emotional distress may very well be essential to any realistic assessment of insurance claims and constructing a barrier against recovery for what may be little more than irritating delays or trivial slights. *See Aetna*, 9 Cal.3d at 579, 108 Cal.Rptr. 480, 510 P.2d 1032 (limiting recovery for "mere bad manners" and litigation in "the field of trivialities"); *see also Gourley v. State Farm*, 53 Cal.3d 121, 127–29, 3 Cal.Rptr.2d 666, 822 P.2d 374, 377–80 (1991) ("It is the financial loss or risk of financial loss which defines the cause of action...."); *Kunkel v. U.S. Ins. Co.*, 84 S.D. 116, 132, 168 N.W.2d 723, 732 (1969) (damages for mental suffering based on showing of insurer's negligence permitted only upon evidence that insured suffered financial distress, property loss, loss of employment, or other pecuniary loss); *cf. Anderson v. Continental Ins.*, 85 Wis.2d 675, 696, 271 N.W.2d 368, 378 (1978) (even upon showing of reckless disregard, recovery for emotional distress requires proof of substantial damages aside and apart from emotional distress itself).

In any event, no third party claim, premised solely on a theory of negligence, is before us, and we are therefore not called upon to resolve that question, much less overrule well-established case law already purporting to resolve it. In my opinion, the majority's choice to do so, along with its rationale ac-

1. *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Colo.App.1988).

2. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984).

commodating damages for emotional distress in breach of insurance contract claims generally, comfortably situates this holding within a line of recent holdings by this court deviating from traditionally accepted principles of tort and contract law, all with the practical effect of facilitating and enhancing recoveries from insurance providers. *See, e.g., Trimble II,* 691 P.2d at 1141 (despite duty of good faith and fair dealing implied in all contracts, only breach of insurance contract gives rise to claim for damages in tort); *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1270–72 (1985)(expanding rule of *Trimble* to include worker's compensation insurer); *Scott Wetzel Servs., Inc., v. Johnson,* 821 P.2d 804, 812 (Colo.1991) (expanding rule of *Savio* to include tortious damages against independent worker's compensation claims adjuster); *Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J,* 940 P.2d 348, 352 (Colo.1997)(expanding insurer/insured relationship to include relationship of surety and beneficiary); *Giampapa v. Am. Fam. Mut. Ins. Co.,* 64 P.3d 230, 237 (Colo.2003)(allowing recovery for willful and wanton breach of insurance contract, over and above statutory treble damage award for willful and wanton breach of PIP coverage, and expanding recovery for emotional distress resulting from willful and wanton breach of contract); *Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 469 (Colo.2003) (expanding *Trimble* to permit tort claim against agent of insurer for its role in insurer's decision to withhold payment).

As I have indicated elsewhere, *see Cary,* 68 P.3d at 496–72 (Coats, J., dissenting); *Giampapa,* 64 P.3d at 255–56 (Coats, J., dissenting), I would leave regulation of the insurance industry, and all of the public policy choices that implies, to a primarily deliberative, rather than adjudicative, process. I therefore join only in the judgment of the court.