**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 17, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRENDA SANDOVAL,

      Plaintiff - Appellant/Cross
      Appellee,

v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA,
a/k/a Unum,

      Defendant - Appellee/Cross
      Appellant.

Nos. 19-1047 & 19-1164

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:17-CV-00644-WJM-KMT)**
_____

Joseph M. Gorman, Shakeshaft & Gorman, Colorado Springs, Colorado
(Kenneth J. Shakeshaft with him on the briefs), for Plaintiff-
Appellant/Cross Appellee.

Kenneth F. Rossman, IV, Lewis Roca Rothgerber Christie LLP, Denver,
Colorado (Stephen M. Bressler, Lewis Roca Rothgerber Christie LLP,
Phoenix, Arizona, with him on the briefs), for Defendant-Appellee/Cross
Appellant.
_____

Before **TYMKOVICH**, Chief Judge, **BACHARACH**, and **CARSON**,
Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This suit grew out of an insurance policy that protected against disabilities. The insured (Ms. Brenda Sandoval) submitted a claim to her insurer, Unum Life Insurance Company of America, which initially paid benefits but then terminated them. The termination of benefits led Ms. Sandoval to sue Unum for

- a common-law tort (bad faith breach of insurance contract),

- a statutory tort (unreasonable conduct under Colo. Rev. Stat. § 10-3-1115 to 1116), and

- breach of contract.

The district court granted Unum's motion for partial summary judgment on the tort claims. The contract claim went to trial, where the jury rendered a verdict for Ms. Sandoval. The district court later denied Unum's motion for judgment as a matter of law. Ms. Sandoval appeals the grant of Unum's motion for partial summary judgment, and Unum cross-appeals the denial of its motion for judgment as a matter of law.

We affirm the award of partial summary judgment on the tort claims because Unum conducted a reasonable investigation. On the contract claim, we also affirm the denial of Unum's motion for judgment as a matter of law. The policy contained two alternative tests for a disability, and the evidence permitted a reasonable finding that Ms. Sandoval had satisfied at least one of these definitions. The district court thus did not err in denying Unum's motion for judgment as a matter of law.

2

**1. Unum issued a long-term disability policy to Ms. Sandoval.**

Under the insurance policy, Ms. Sandoval was entitled to benefits if she incurred a disability. The policy provided two alternative definitions of a disability:

> 1. [Ms. Sandoval is] unable to perform the material and substantial duties of [her] regular occupation and [is] not working in [her] regular occupation or any other occupation

or,

> 2. [She is] unable to perform one or more of the material and substantial duties of [her] regular occupation, and [she has] a 20% or more loss in [her] indexed monthly earnings while working in [her] regular occupation or in any occupation.

Appellant's App'x at 358 (emphasis omitted). But even if she satisfied one of these definitions, Ms. Sandoval would be considered disabled only if she remained "under [the] regular care of a physician." *Id.*

**2. Unum awarded disability benefits but terminated them roughly three months later.**

While working as a training supervisor, Ms. Sandoval had surgery because of pain in her neck and arm. The surgery temporarily relieved Ms. Sandoval's pain, and she returned to work as a training supervisor. But the pain resumed, and she had a second surgery. The surgeon opined that Ms. Sandoval could not return to work as a training supervisor because she could sit only briefly before suffering substantial pain.

3

Ms. Sandoval submitted an insurance claim to Unum, asserting a disability. Unum awarded disability benefits based on the surgeon's opinion, but then asked two physicians to review Ms. Sandoval's medical records. Both physicians opined that Ms. Sandoval could return to work, and Unum terminated the insurance benefits.

Ms. Sandoval requested reconsideration of the claim, relying on a new statement from her surgeon, a report from a functional capacity examination, and a vocational assessment. To address the request for reconsideration, Unum consulted an internist. Like the other two consulting physicians, the internist opined that Ms. Sandoval could return to work. So Unum adhered to its initial decision to deny the claim.

**3.** **The district court properly granted partial summary judgment to Unum on the tort causes of action.**

We affirm the district court's award of summary judgment to Unum on the causes of action for a common-law tort and a statutory tort.

**3.1** **We engage in de novo review of the district court's grant of partial summary judgment, applying Colorado law as to an insurer's duties.**

Ms. Sandoval challenges the district court's grant of summary judgment to Unum on her tort causes of action. To consider these challenges, we engage in de novo review, applying the same standard for summary judgment that applied in district court. *See Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016).

4

This standard requires us to view the evidence and all reasonable inferences favorably to Ms. Sandoval. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is warranted only in the absence of a "genuine dispute as to any material fact" and the defendants' entitlement "to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Ms. Sandoval's tort causes of action arise under Colorado law, which requires an insurer to treat an insured with good faith. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004) (en banc). If this duty is breached, the insurer can incur tort liability. *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (en banc).

To prevail on the cause of action for a common-law tort, Ms. Sandoval must show that Unum (1) acted unreasonably and (2) knew or recklessly disregarded the unreasonableness of its conduct. *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) (en banc). For the statutory tort, Ms. Sandoval must show that Unum unreasonably delayed or denied payment of benefits, but need not show knowing or reckless conduct. Colo. Rev. Stat. § 10-3-1115(1)(a). The denial of benefits was unreasonable if Unum refused to pay "a covered benefit without a reasonable basis for that action." Colo Rev. Stat. § 10-3-1115(2).

**3.2 Because Unum conducted a reasonable investigation before denying Ms. Sandoval's claim, the district court properly granted partial summary judgment to Unum on the tort causes of action.**

Ms. Sandoval argues that the district court erred in granting summary judgment to Unum on the tort causes of action because a rational factfinder could justifiably infer that Unum had acted unreasonably in investigating the claim.[1] For this argument, Ms. Sandoval points to Unum's

- disagreement with the opinion of her treating physician, an orthopedic surgeon who had opined that Ms. Sandoval could not work as a training supervisor because of chronic pain,

- reliance on the opinions of two consulting physicians who had disagreed with the assessment of Ms. Sandoval's treating physician without conducting their own examinations, and

- reliance on an internist who allegedly lacked qualifications to assess a disability and disregarded objective data.

Ms. Sandoval also relies on an affidavit by an expert witness, who opined that Unum's investigation was unreasonable.

---

[1] Unum argues that the claim was fairly debatable. The existence of a fairly debatable claim may bear on the reasonableness of the insurer's conduct. *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226–27 (10th Cir. 2016) (applying Colorado law). Ms. Sandoval does not question the existence of a fairly debatable claim. She instead contends that the district court erroneously treated the existence of a fairly debatable claim as fatal to her tort causes of action. We disagree with this interpretation of the district court's ruling, for the court acknowledged that the existence of a fairly debatable claim was not "outcome determinative as a matter of law" or "the beginning and the end of the analysis." Appellant's App'x at 485–86.

In her reply brief, Ms. Sandoval contends that her tort causes of action focus on Unum's denial of her request for reconsideration. But in the district court proceedings and in her opening appellate brief, Ms. Sandoval also challenged Unum's initial decision to terminate benefits. For example, Ms. Sandoval alleged in the complaint that Unum had failed to conduct a reasonable investigation and had used non-examining physicians to make medical determinations. *See* Appellant's App'x at 39. Ms. Sandoval stuck to this allegation when responding to Unum's motion for partial summary judgment, again addressing the reasonableness of the initial decision to deny the claim. *See id.* at 380 (arguing that Ms. Sandoval had "shown [Unum] acted unreasonably by not doing a thorough investigation, failing to resolve conflicting opinions and violating their own policies contained in the claims manual"). And in her opening brief on appeal, Ms. Sandoval again addressed the initial denial of the claim, invoking expert testimony that "[Unum's] unreasonable actions [had] started with its first termination of [Ms. Sandoval's] disability claim." Appellant's Opening Br. at 16.

Given Ms. Sandoval's allegations in the complaint and briefing prior to her reply brief, we consider Unum's investigation as to both the initial

claim and the request for reconsideration. We conclude that the totality of the investigation was reasonable as a matter of law.[2]

Unum's disagreement with Ms. Sandoval's surgeon does not suggest that the investigation was unreasonable. Unum's claims manual calls for deference to treating physicians and authorizes Unum to contact treating physicians if a reason exists to question their opinions. But Unum tried twice to contact Ms. Sandoval's surgeon and was rebuffed both times.[3]

On top of its efforts to contact the surgeon, Unum obtained written information from Ms. Sandoval, interviewed her, reviewed her medical records, and asked an occupational physician to review these records. The occupational physician conducted this review and opined that Ms. Sandoval could return to her job as a training supervisor if the job could be modified.

---

[2] On the cause of action for a common-law tort, Unum argues that Ms. Sandoval failed to present evidence of intentional or reckless conduct. We need not address this argument.

[3] In her reply brief, Ms. Sandoval argues that after she sought reconsideration, Unum should have tried again to reach the surgeon. Ms. Sandoval had not made this argument until her reply brief, which was too late. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236 n.2 (10th Cir. 2016) (holding that addition of an argument in the reply brief was "too late"). In any event, no factfinder could legitimately find that Unum acted unreasonably by forgoing a third effort to contact the surgeon after he had declined two prior requests.

8

The occupational physician also recommended that Unum consult with another physician. Unum followed that recommendation and consulted an orthopedic surgeon. He too opined that Ms. Sandoval could work as a training supervisor, noting that

- her motor strength and cervical motion were normal,

- she had been taking only over-the-counter anti-inflammatories, and

- she had been using a computer, working as a hairdresser, driving, and performing household chores.

Unum evaluated all of the available information and denied the disability claim.

When Ms. Sandoval asked for reconsideration, Unum consulted a third physician, an internist. The internist reviewed Ms. Sandoval's medical records and the report of a functional capacity evaluation, opining that the information did not support the disability claim because

- Ms. Sandoval had not been using pain medication or other treatments appropriate for severe, chronic pain,

- the physical examinations had not consistently shown weakness, atrophy, or sensory loss,

- the x-rays had shown improvement after the surgery, and

- the functional capacity evaluation had not shown full effort on some tasks.

In discussing the functional capacity evaluation, the internist stated that the report did not reflect Ms. Sandoval's heart rates at the start and end of

each activity. This omission was considered significant because an elevation in heart rate could show that Ms. Sandoval was giving her full effort on each task.

Ms. Sandoval disagrees with the internist's assessment, pointing to

- the examiner's conclusion that Ms. Sandoval had exerted "full effort" and

- the report's reference to the starting and ending heart rates for two of the tasks (isoinertial lift and carrying).

*See* Appellant's App'x at 192. But Unum could also reasonably rely on the internist's assessment. The functional capacity report didn't reflect the starting and ending heart rates for most of the tasks, and the internist could reasonably conclude that the heart rates would reflect the level of Ms. Sandoval's effort.

Ms. Sandoval also challenges the internist's analysis of one of the tests (the Purdue Pegboard Test) used to evaluate functional capacity. This test measured Ms. Sandoval's ability to use her hands in a coordinated and efficient manner. Ms. Sandoval's scores for this test fell below the first percentile for each hand, for both hands together, and for a task requiring assembly. In assessing these scores, the internist observed that Ms. Sandoval's medical records "d[id] not reflect pathology of the hands or upper extremities that would explain these severely limited percentages." *Id.* at 251.

Challenging this observation, Ms. Sandoval argues that

10

- the functional capacity report reflects successful completion of the Purdue Pegboard Test and

- her successful completion of the test shows the validity of the poor results on the four listed tasks.

Ms. Sandoval did not make this argument in district court or urge plain error review, so we consider the new argument waived. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (holding that an appellant's failure to explain "how [arguments] survive the plain error standard waives the arguments in this court" (emphasis omitted)).

Even if Ms. Sandoval had not waived this argument, we would have rejected it. Industry standards supply the guidepost to assess the reasonableness of the insurer's conduct. *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004) (en banc); *see* p. 12, below. And Ms. Sandoval didn't present evidence that the internist had failed to satisfy industry standards. Given the lack of such evidence, Unum could reasonably rely on the internist's assessment of the results of the Purdue Pegboard Test.

Ms. Sandoval also criticizes the internist's disregard of the vocational evaluation, which was based on the opinions of Ms. Sandoval's surgeon. But as discussed above, two consulting physicians had already considered the surgeon's opinions and reported to Unum that Ms. Sandoval could return to work. Given these reports, Unum could reasonably conclude

11

that the vocational evaluation did not warrant reconsideration of the disability claim.

Ms. Sandoval not only alleges the internist's disregard of evidence but also questions his qualifications to assess an alleged disability. As Ms. Sandoval points out, the internist was neither a surgeon nor an expert in pain management. But the internist's lack of expertise in surgery or pain management does not render his opinions meaningless. The internist explained that he had seen many patients who had undergone surgeries like Ms. Sandoval's and studied with a physician who was well known for treating chronic pain. Given this explanation, Unum could reasonably rely on the internist's opinions.

Finally, Ms. Sandoval relies on an affidavit by her expert witness. The expert witness

- stated that Unum had unreasonably relied on the opinions of physicians who had not conducted their own examinations and

- challenged Unum's reliance on Ms. Sandoval's decision to forgo narcotic medications and her score of 5/5 on measures of strength during clinical examinations.

These arguments are not persuasive. The reasonableness of an insurer's investigation is measured by industry standards. *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004) (en banc); *see* p. 11, above. But the expert witness did not identify any industry standards requiring Unum's consulting physicians to examine Ms. Sandoval before opining

12

about her ability to work. The expert witness's opinions thus do not create material factual issues on the causes of action for common-law and statutory torts. *See Zolman v. Pinnacol Assurance*, 261 P.3d 490, 500 (Colo. App. 2011) ("[The expert's] affidavit and report simply state his conclusory opinions that [the insurer] acted in bad faith without establishing any genuine issue of material fact.").

The expert witness's discussion of Ms. Sandoval's avoidance of narcotic medications and her strength score of 5/5 does not suggest that Unum acted unreasonably. Unum consulted an internist, who noted the existence of many alternative treatments for pain, such as "ongoing or consistent treatment with physical therapy, occupational therapy, acupuncture, biofeedback, cognitive behavioral therapy, or aqua therapy (all commonly used minimally invasive pain relief techniques), . . . injection treatments, . . . [or] a spinal cord stimulator." Appellant's App'x at 245. The internist saw no indication that Ms. Sandoval had tried any of these alternative treatments. *Id*. Given the apparent failure to try any alternative treatments, Unum could reasonably conclude that Ms. Sandoval was not disabled despite the expert witness's opinion to the contrary.

\* \* \*

Because Unum reasonably investigated Ms. Sandoval's claim, the district court properly granted partial summary judgment to Unum on the tort causes of action.

13

**4.      Because the jury could reasonably find that Ms. Sandoval was disabled, the district court properly denied Unum's motion for judgment as a matter of law on the cause of action for breach of contract.**

In cross-appealing, Unum challenges the district court's denial of its motion for judgment as a matter of law on Ms. Sandoval's cause of action for breach of contract.

Our review is de novo. *See Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 766 (10th Cir. 2019) (per curiam). In engaging in de novo review, we consider judgment as a matter of law to be appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *In re Cox Enters., Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017) (quoting *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments*, 843 F.3d 1225, 1247 (10th Cir. 2016)).

Unum argues that Ms. Sandoval was not disabled under the policy's first definition of a disability: "[She is] unable to perform the material and substantial duties of [her] regular occupation and [she is] not working in [her] regular occupation or any other occupation . . . ." Appellant's App'x at 358 (emphasis omitted); *see* Part 1, above. Unum maintains that even after Ms. Sandoval stopped working as a training supervisor, she continued to work as a cosmetologist, which qualified as "any other occupation" under the policy.

14

We need not address Unum's arguments about the first definition of a disability. In denying Unum's motion, the district court also concluded that Ms. Sandoval was disabled under the second definition: "[She is] unable to perform one or more of the material and substantial duties of [her] regular occupation, and [she has] a 20% or more loss in [her] indexed monthly earnings while working in [her] regular occupation or in any occupation." Appellant's App'x at 358 (emphasis omitted); *see* Part 1, above.

In its opening brief on the cross-appeal, Unum does not argue that the district court erred in concluding that Ms. Sandoval was disabled under the second definition. Unum has thus waived its right to appeal the district court's ruling on that ground. *See Rivero v. Bd. of Regents*, ___ F.3d ___, No. 18–2158, slip op. at 16 (10th Cir. Feb. 24, 2020) ("If the district court states multiple alternative grounds for its ruling and the appellant does not challenge all these grounds in the opening brief, then we may affirm the ruling.").[4]

Even if Unum had not waived its right to appeal this ruling, Unum has not shown an error. The jury could reasonably conclude that Ms.

---

[4]     Unum does raise this argument in the reply brief, but this was too late. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236 n.2 (10th Cir. 2016) (holding that addition of an argument in the reply brief was "too late").

Sandoval had satisfied the second definition of a "disability" because her earnings dipped by more than the 20% benchmark in the policy.

The jury could also reasonably find that Ms. Sandoval had remained "under the regular care of a physician," which was required for benefits. Appellant's App'x at 358. The policy states that "regular care" requires the insured to

- personally visit a physician as frequently as is medically required according to generally accepted medical standards, to effectively manage and treat [her] disabling condition(s) and

- [receive] the most appropriate treatment and care which conforms with generally accepted medical standards, for [her] disabling condition(s) by a physician whose specialty or experience is the most appropriate for [her] disabling condition(s), according to generally accepted medical standards.

*Id.* at 359.

Unum argues that Ms. Sandoval was not "under the regular care of a physician" because she stopped seeing her surgeon about a year after her second surgery. But the jury could reject this argument based on the policy language and the surgeon's testimony. The policy states that "regular care" involves seeing a physician "as frequently as is medically required" for "the most appropriate treatment and care which conforms with generally accepted medical standards." *Id.* And the surgeon testified that he hadn't discharged Ms. Sandoval as a patient, so she could return whenever needed. Appellee's Supp. App'x at 206.

16

Given this policy language and testimony, the jury could reasonably find that Ms. Sandoval had remained under the surgeon's "regular care." *See Heller v. Equitable Life Assur. Soc'y of U.S.*, 833 F.2d 1253, 1257 (7th Cir. 1987) (concluding that the policy term "under the regular care and attendance of a physician" means "that the insured is obligated to periodically consult and be examined by his or her treating physician at intervals to be determined by the physician"); *Cont'l Cas. Co v. Pfeifer*, 229 A.2d 422, 426 (Md. 1967) (holding that the evidence supported a jury's finding that an insured was under "the regular care and attendance of a physician" when doctors concluded that the insured's symptoms "were unchanged and were unlikely to change").

## 5. Conclusion

We affirm the district court's rulings

- granting Unum's motion for partial summary judgment on Ms. Sandoval's causes of action for common-law and statutory torts and

- denying Unum's motion for judgment as a matter of law on Ms. Sandoval's cause of action for breach of contract.