**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Petitioner,**

v.

**Cynthia M. ALLEN and Leland Aultman, Respondents.**

No. 03SC538.

Supreme Court of Colorado, En Banc.

Dec. 6, 2004.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Englewood, for Petitioner.

Walter H. Sargent, a professional corporation, Walter H. Sargent, Norton Frickey, P.C., Robert B. Carey, Dawn R. Kubik, Colorado Springs, for Respondents.

BENDER, Justice.

In this appeal, we review and reverse in part and affirm in part the court of appeals' decision in *Allen v. American Family Mut. Ins. Co.*, 80 P.3d 799 (Colo.App.2002). This case arises out of a single car accident and involves a claim for coverage under an auto-

mobile insurance contract containing a Personal Injury Protection [1] (PIP) endorsement and a tort claim for the breach of an insurer's duty of good faith. The court of appeals upheld the trial court's construction of this insurance policy that made ownership of the vehicle involved in the accident irrelevant in determining whether coverage existed. With respect to the tort claim, the court of appeals held that expert testimony was not required to establish industry standards of care when claiming that the insurer breached its duty of good faith.

On the contract claim, we hold that this particular policy only provides PIP coverage for injuries sustained by permissive drivers of vehicles owned by the named insured and identified in the policy. Therefore, we reverse the court of appeals on the contract claim and order a new trial for the jury to resolve the disputed factual issue of who owned the vehicle involved in the accident.

■ On the issue of whether expert testimony was required for the tort claim, we affirm the court of appeals and hold that in a first-party claim for the breach of an insurer's duty of good faith, expert testimony is not required to establish the insurer's standard of care when a statute provides valid, but not conclusive, evidence of the standard of care and when the standard of care is within the common knowledge and experience of the average juror. Hence, upon remand, the damage award on the contract claim and the tort claim shall stand in the event the jury returns a finding that ownership of the vehicle had not transferred to the plaintiff at the time of the accident.

## FACTS AND PROCEEDINGS BELOW

Cynthia Allen, respondent before us and plaintiff in the trial court, lived with Phillip Jackson and his wife in Grand Junction, Colorado. Jackson sold automobile insurance out of his home office for American Family Mutual Insurance Company, petitioner here

and defendant in the trial court. Allen was paid by the Jacksons to do housework and carve spears which Jackson sold at local and regional art fairs. Jackson paid Allen's weekly salary in cash which varied depending on the number of hours she worked and the number of spears she completed. From her salary, Jackson would deduct $100 for rent plus other expenses but did not withhold taxes or other employment deductions.

Allen occasionally borrowed Jackson's 1986 GMC truck to run errands and visit family in the Grand Junction area. On June 19, 1998, Allen and Jackson entered into a hand-written agreement for Allen to purchase the truck for $2,600. The terms of this agreement permitted Jackson to deduct an additional $75 to $100 from Allen's weekly salary. On the top of the first page was written: "Contract entered into June 19th 1998[-] Represents a Bill of Sale." The agreement contained the terms of the sale:

> Cindy will purchase 1986 GMC P-up . . . for the amount of $2,600, with no interest charged if paid in full by Jan. 31st 1999. Cindy agrees to pay for vehicle weekly, from bonus monies earned, min of $75 weekly and try for $100 weekly. To be taken from her earnings, exceptions to this payment schedule, must be agreed upon by both parties.

Three payments totaling $300 were recorded on the first page of the document and initialed by both parties. The agreement contained several blank pages to record future payments. On the fourth page, dated June 21, 1998, and signed by both parties, the agreement stated that beginning June 19, 1998, Allen would be responsible for the insurance, maintenance, gas, and all upkeep of the vehicle and that "Cindy and Phil" would transfer title to the vehicle at the end of June or in early July:

> Cindy Allen will totally be responsible for vehicle from June 19th, insurance, maint., gas, [and] all upkeep. Cindy and Phil will

---

1. We note that the "Colorado Auto Accident Reparations Act" (the No Fault Act) was enacted in 1973 and was allowed to sunset by the Colorado General Assembly in July of 2003. This Act required all automobile insurance policies to include no fault coverage, also known as PIP cov-

erage, which provides the insured party with insurance coverage irrespective of who is at fault in an automobile accident. *See* ch. 94, sec. 1, § 13–22–1 to –23, 1973 Colo. Sess. Laws 334 (codified as amended § 10–4–701 to—726, 3 C.R.S. (2002) (repealed July 1, 2003)).

go to bank later and get the title, last weekend in June or first week in July.

Jackson maintained insurance on the vehicle with American Family after this agreement was signed and after Allen made three payments.[2] Jackson testified that he knew Allen did not have a driver's license and that she did not have insurance at the time the agreement was concluded. Jackson also retained a set of keys to the truck, did not remove his license plates from the vehicle, and left his proof of insurance and registration/ownership tax receipt in the glove box of the truck. Jackson also drove the truck on at least one occasion after agreeing to sell it to Allen. Title to the vehicle was never transferred to Allen.

Three weeks after signing this agreement, on July 3, 1998, Allen drove the truck to Denver with several other passengers. On the return trip, Allen became tired and asked one of the passengers to drive. The new driver fell asleep and the truck swerved off the road, flipped, and both Allen and Leland Aultman[3] were severely injured.

At trial, the parties disputed whether Allen needed Jackson's permission to use the truck the weekend of the accident. Allen testified that she believed she needed permission to drive the truck. Her testimony was supported by the claims report filed three days after the accident by Jackson's wife who stated: "[Jackson] had given Cindy Allen permission to drive the vehicle out to her mom's house in Clifton and that it would be parked there for the week-end [sic]." Jackson testified that once they had entered into the agreement, he did not restrict Allen's use of the truck and that on the weekend of the accident he did say something to the effect of "go out and park the vehicle, and don't get in trouble this weekend."

Coverage for damage to the truck and injuries sustained by Allen was requested under Jackson's American Family insurance policy. His policy contained both liability coverage, which protects against damage to the vehicle, and a Deluxe Personal Injury Protection endorsement. Under the PIP endorsement, an eligible injured person receives compensation for medical and rehabilitation expenses, work loss, essential services expenses, and death compensation. Page two of the endorsement defines an individual eligible to receive these benefits as the named insured or "[a]ny other person who sustains bodily injury while: 1) [o]ccupying the insured motor vehicle with the named insured's consent . . . ."

Four days after the accident, on July 7th, John St. Vrain, a casualty claims investigator working for American Family, recorded a telephone conversation with Jackson about this agreement to sell the truck to Allen. Jackson told St. Vrain he had not yet given Allen title to the truck and that the vehicle was not registered in Allen's name. St. Vrain obtained a copy of their agreement but did not interview Allen as to who owned the truck on the date of the accident.

On July 9th, St. Vrain conferred with his supervisor and then wrote a letter to Jackson denying liability coverage. He wrote that Allen was "in possession of" the truck and that Jackson's auto policy did not allow for assignment of an interest in the policy without American Family's written consent.[4] In pointing to the assignment clause, the letter incorrectly referenced "Section Part IV General Provisions" of Jackson's policy, which concerns loss due to vehicle damage.[5]

In addition, St. Vrain referred Jackson to the case of *United Fire and Casualty Co. v. Perez*[6] for the proposition that once a condi-

---

**2.** Jackson testified at trial that his insurance policy on the truck had been paid through September 5, 1998. American Family cancelled this policy on July 23, 1998, providing Jackson with a prorated rebate.

**3.** Cynthia Allen and Leland Aultman are co-plaintiffs in this case and are at times referred to collectively as Allen.

**4.** American Family does not dispute that the transaction between Allen and Jackson was not

an assignment of Jackson's policy to Allen as stated in this letter.

**5.** The correct reference for the assignment clause should have been to paragraph (6) of "Part VI— General Provisions" which prohibits assignment of the policy.

**6.** We assume that this is most likely a reference to *United Fire & Cas. Co. v. Perez*, 161 Colo. 31, 419 P.2d 663 (1966).

tional purchaser takes possession of a vehicle, American Family's liability under the policy terminates. The letter contained the following quotation attributed to the *Perez* case:

Where a conditional sale of a motor vehicle takes place, such as where installment payments are agreed upon, the seller's liability insurance terminates when the sale (Transfer [sic] of car physically) takes place. This is true even though the title is not delivered until the final payment is made. If an accident occurs during the term of the contract, it is the buyer's responsibility to have liability insurance.

At trial it was stipulated that this quotation was not a direct quotation from *Perez* but was taken from a memorandum written by American Family's legal department.

On the same day that St. Vrain interviewed Jackson by telephone, Jackie Greathouse, an American Family investigator, also interviewed Jackson by telephone about the accident. Greathouse, who did not talk to St. Vrain about the investigation, reported that Jackson said he "was intending to sell [the] truck" to Allen and thought that Allen was using the vehicle to go to her stepmother's home where it would remain over the weekend.

A day after her telephone conversation with St. Vrain, Greathouse conducted a telephone interview with Allen at the hospital. At trial, Allen testified that she did not remember this conversation and was still on a "morphine drip" when the interview occurred on July 8th. Greathouse reported that Allen told her she was buying the vehicle from Jackson and had made several payments on the total purchase price. She also noted that Allen "considered it her vehicle [but] ... title was never transferred." Greathouse concluded in her report that "[American Family] would need to investigate to determine if

there is coverage for payment of [Allen's] medical bills."

American Family's Cheryl Lawson, who was responsible for making PIP determinations, received Greathouse's report as well as a copy of the letter written by St. Vrain to Jackson. Upon review of these documents, she issued a second letter denying PIP coverage to Allen on July 15th. This letter also said that Jackson's policy would not allow him to assign it to another person and that "liability insurance terminates when the sale (transfer of car physically) takes place." Lawson's letter was essentially identical to St. Vrain's letter, with the same reasoning, the same block quotation misstating the law, and the same error referencing the policy's assignment clause.

Lawson did not speak to either Allen or Jackson regarding who owned the truck at the time of the accident. Both St. Vrain and Lawson testified that they were following American Family's standards for investigating claims which incorporated the Unfair Claims Practices Act, section 10–3–1104, C.R.S. (2004). Both also testified that it was American Family's policy to obtain all of the available facts before denying coverage.

Thereafter, Allen sued American Family for breach of the insurance contract claiming that she was eligible for benefits under Jackson's PIP endorsement and that American Family breached its duty of good faith when it denied her coverage. At the close of the plaintiff's case, American Family moved for a directed verdict pursuant to C.R.C.P. 50.[7] It argued that Allen was a conditional purchaser of the truck and therefore had no rights under Jackson's PIP endorsement because, pursuant to the agreement, he no longer owned the vehicle. American Family supported its argument by referencing the definition of an eligible injured person on page two of the PIP endorsement which limits

7. C.R.C.P. 50 states in full:
A party may move for a directed verdict at the close of the evidence offered by an opponent or at the close of all the evidence. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion

had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

coverage to permissive drivers and argued that "a buyer of a vehicle obtain[s] no rights under the seller's insurance policy." The trial court denied American Family's motion for a directed verdict regarding its liability under the policy.

The defense did not present any witnesses and rested. Allen then moved for a directed verdict on the issue of American Family's liability under Jackson's policy. She argued that the insurance policy covered the truck and that whether she or Jackson owned it was irrelevant in determining coverage under the policy. At this point, the record indicates that American Family argued that "page 207" of the policy limits coverage to people using the insured's vehicle with the insured's consent. Therefore, because Allen was the conditional owner of the vehicle, the policy no longer applied.

The trial court granted Allen's motion for a directed verdict with respect to liability under the policy, stating "as a matter of law . . . [Allen and Aultman] were entitled to PIP benefits under American Family's policy." The court construed the definitions in the liability section and PIP endorsement to apply to vehicles listed on the declarations page and found that Jackson's "policy does not require by its express term[s] ownership [of the vehicle]." The tort claim for breach of the covenant of good faith was submitted to the jury which returned a verdict against American Family. The jury also awarded contract damages on Allen's contract claim and economic, non-economic, and punitive damages on the tort claim.

American Family appealed and the court of appeals affirmed. *Allen,* 80 P.3d 799. On Allen's contract claim, the court of appeals reasoned that American Family did not preserve for appeal the issue of whether the PIP endorsement contained an ownership requirement and therefore affirmed American Family's liability in contract. *Id.* at 801–02. On the tort claim, the court of appeals also affirmed the trial court's ruling that expert testimony was not required to establish an insurer's standard of care in a claim for the breach of the duty of good faith when, in cases like this, the standard of care does not involve questions beyond the competency of ordinary persons. *Id.* at 803.

We granted American Family's petition for certiorari to review the decision of the court of appeals.[8]

## Analysis

## I.

### Coverage Under This Insurance Policy.

■ As a threshold matter, we address American Family's argument that the court of appeals erred when it concluded that American Family failed to preserve for appeal whether Allen was eligible to receive benefits under Jackson's policy. We agree with American Family that this issue was preserved for appeal.

The court of appeals reasoned that American Family did not direct the trial court to policy language that limits coverage to vehicles owned by Jackson. It held that American Family had not made the motion for a

8. We granted certiorari to consider the following issues presented by American Family:

 1. Whether the court of appeals improperly refused to address, on the merits, American Family's assertion that the trial court had erred in granting a directed verdict against American Family and in denying American Family's motion for a directed verdict on a PIP breach of contract claim based on the court of appeals' determination that American Family had not stated its motion for a directed verdict with sufficient clarity.

 2. Whether, under the circumstances and under binding precedent, including this court's decision in *Sachtjen v. American Family Mutual Insurance Co.,* 49 P.3d 1146 (Colo. 2002), the trial court, as affirmed by the court of appeals, erred in granting a directed

verdict in plaintiff's favor on the PIP breach of contract claim and in denying American Family's motion for directed verdict.

 3. Whether the court of appeals improperly ignored evidence in the record concerning the investigation done by American Family concerning ownership of the vehicle and erred in holding that no expert testimony was necessary, under the circumstances, to establish a first party bad faith claim because of an absence of investigation concerning ownership of the vehicle.

 4. Whether the trial court erred in denying American Family's motion for a directed verdict in connection with plaintiffs' bad faith claim based on plaintiffs' failure to present objective evidence of the standard of conduct in the insurance industry.

directed verdict with "sufficient specificity" and thus determined that the trial court's denial of the motion was not preserved for appeal. *Allen,* 80 P.3d at 802.

■ However, our reading of the record indicates that when American Family made its motion for a directed verdict at the close of the plaintiffs' case, it accurately cited the definitions on page two of the PIP endorsement, not "page 207" as indicated by the court of appeals.[9] American Family argued that these definitions limited its liability to vehicles owned by the named insured. Thus, we conclude that the motion was made with "specific grounds" according to C.R.C.P. 50 and was therefore preserved for appeal.[10]

Next, we examine the question of whether Jackson's PIP endorsement applies only to vehicles owned by him. Jackson's policy contained two separate sections: one for liability coverage and one for PIP coverage. The liability portion provides benefits to third-parties if a vehicle covered by the policy is involved in an accident and harms someone other than the named insured or damages another's property. In contrast to the liability coverage, the PIP coverage provides benefits to the insureds (first-parties), and other permissive drivers, who are injured in an accident arising from the use of the vehicle.

American Family argues that the definitions in the PIP endorsement limit coverage to injuries incurred while operating a vehicle that is owned by the named insured. It claims that Allen, not Jackson, was the owner of the truck and was therefore not eligible to receive PIP benefits even though the vehicle was still listed on Jackson's policy at the time of the accident.

Allen first argues that coverage under this policy does not end once the policy holder transfers ownership in a vehicle described in the declarations. Second, she asserts that consent clauses in contracts are to be liberally construed to find coverage. Third, she counters that the conditional sales agreement between Allen and Jackson did not transfer the immediate right of possession in the truck and that Allen was thus not the owner of the vehicle at the time of the accident.

■ We review this policy *de novo* because the interpretation of a contract is a question of law. *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n,* 67 P.3d 12, 20 (Colo.2003). When interpreting an insurance policy we apply principles of contract interpretation. *Cotter Corp. v. American Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 819 (Colo.2004) (citing *Thompson v. Md. Cas. Co.,* 84 P.3d 496, 501 (Colo.2004)). We give words in a policy their plain and ordinary meaning, unless the intent of the parties indicates otherwise. *Cotter,* 90 P.3d at 819–20.

■ Turning to the policy language on page two of the PIP endorsement, it states that American Family will provide PIP benefits for work loss and losses due to medical and rehabilitation expenses incurred by an "eligible injured person" who is harmed in an accident while using or operating a motor vehicle. An eligible injured person is defined as the named insured or "[a]ny other person who sustains bodily injury while: 1) [o]ccupying the insured motor vehicle *with the named insured's consent* " (emphasis added). Giving these words their plain and ordinary meaning, we hold that this policy provides

---

9. The court of appeals relied upon a reference in the record to a non-existent "page 207 of the policy" as the basis for concluding that American Family had not directed the trial court to the PIP definitions with "sufficient specificity." *Allen,* 80 P.3d at 801–02. This reference appears in the record after both sides rested and when American Family was arguing against Allen's motion for a directed verdict, not when making its motion for a directed verdict. We suspect the court reporter made a typographical error and was in fact referencing "page 2 of 7" not "page 207" as it appears in the record. C.A.R. 10(e) provides that when the record does not conform materially to what occurred at trial, then the trial court is

to correct the omission or misstatement unless the parties stipulate to the correction. Because we hold that this issue was properly preserved, we need not remand this case to the trial court for clarification of the record. *See Blecker v. Kofoed,* 672 P.2d 526, 528 n. 4 (Colo.1983) (stating: "Our disposition of this case makes it unnecessary to consider the appropriateness of a remand for clarification").

10. Arguments not raised before the trial court may not be raised for the first time on appeal. *In re Estate of Stevenson v. Hollywood Bar & Café, Inc.,* 832 P.2d 718, 721 n. 5 (Colo.1992).

PIP benefits to the named insured or a permissive driver if he or she is harmed while operating a vehicle identified in the policy with the consent of the named insured.

■ Having determined that the policy will only provide PIP benefits to someone driving a car with the named insured's consent, we address the next relevant issue: whether Jackson, the named insured, could consent to the use of a vehicle for purposes of providing PIP benefits under the No Fault Act if he did not own the vehicle at the time of the accident. Our cases hold that insurance coverage terminates upon the change of ownership unless the insurer agrees otherwise. *See Sachtjen v. American Family Mut. Ins. Co.*, 49 P.3d 1146, 1149 (Colo.2002); *Mid–Century Ins. Co. v. Liljestrand*, 620 P.2d 1064, 1067 (Colo.1980); *Worchester v. State Farm Mut. Auto. Ins. Co.*, 172 Colo. 352, 359, 473 P.2d 711, 714 (1970); and *United Fire & Cas. Co. v. Perez*, 161 Colo. at 35, 419 P.2d at 665. Once ownership transfers, control and the ability to consent to the use of a vehicle ceases in the seller, and the buyer has the full right to decide who may drive the vehicle. *Worchester*, 172 Colo. at 359, 473 P.2d at 715. Thus, only the owner of a vehicle can provide the consent necessary to trigger benefits under this policy.[11]

Here, the trial court construed Jackson's policy to apply to vehicles listed in the policy irrespective of whether he was the owner. The trial court did not consider whether Jackson as a non-owner could consent to Allen's use of the vehicle so that she would be eligible for PIP benefits under his policy. Therefore, the court erred in granting Allen's motion for a directed verdict and in determining that, as a matter of law, this policy provided Allen with PIP benefits.

■ To summarize, we construe the language in this policy to provide PIP coverage to permissive drivers of motor vehicles

listed in the policy and owned by the named insured. In order for Allen to be eligible for benefits under this policy, Jackson, as the named insured, must have owned the truck and must have consented to Allen's use of it. On the other hand, if Allen, as the conditional buyer, was the owner of the truck at the time of the accident, then she would not be eligible to receive PIP benefits under Jackson's policy.

■ As to this issue of ownership, both Allen and American Family take opposing views on the extent to which the conditional sales agreement between Allen and Jackson transferred ownership in the truck. Our precedent, *Sachtjen v. American Family Insurance Company*, 49 P.3d at 1149, provides the test to determine whether a conditional sales agreement transfers ownership to the buyer: "Whether or not the right of immediate possession vests in the conditional vendee ultimately depends upon the agreement of the parties."

In *Sachtjen*, like here, the vehicle involved in the accident was the subject of a conditional sale. 49 P.3d at 1147. We held that ownership had not transferred and the seller's insurer remained liable on the insurance contract because the parties' sales agreement maintained the right of possession in the seller. *Id.* at 1151. The agreement between the parties in *Sachtjen* was not in dispute and the trial court, as the finder of fact, found that the seller had kept a set of keys for himself, continued to insure the vehicle, and limited the purchaser's use of the vehicle until the purchase price was paid in full. *Id.*

■ In this case, while the parties do not dispute the existence of the agreement, whether Jackson's control over the truck had ended and whether Allen had the right of immediate possession or if her use of the truck was limited, are disputed. Allen testi-

---

11. We find Allen's arguments to the contrary unpersuasive. Although we agree that consent clauses in insurance contracts are to be liberally construed to provide coverage. *See Wiglesworth v. Farmers Ins. Exch.*, 917 P.2d 288 (Colo.1996); *Raitz v. State Farm Mut. Auto. Ins. Co.*, 960 P.2d 1179 (Colo.1998). This does not mean that a non-owner of a vehicle can provide the necessary consent to activate coverage. In both *Wigles-*

*worth* and *Raitz* the policy holder was also the owner of the vehicle and the issues in both cases concerned the scope of the owner's initial consent, not whether a non-owner could provide the required consent. *Wiglesworth*, 917 P.2d at 289, 291; *Raitz*, 960 P.2d at 1181, 1188. The key issue here is who owned the truck at the time of the accident—Allen or Jackson.

fied she needed Jackson's permission to use the truck. Allen's allegation was supported by her initial statement to American Family's investigators and by the initial claim filed by Jackson's wife. On the other hand, Jackson testified that Allen was not required to obtain his permission before using the truck. The trial court granted a directed verdict, in Allen's favor, ruling that she was eligible for PIP benefits and that ownership was irrelevant before this factual issue could be decided by the jury.

Because we hold that this policy provides PIP coverage to permissive drivers of vehicles owned by the named insured, it is necessary to determine whether Allen or Jackson owned the vehicle at the time of the accident. The trial court erred in entering a directed verdict before the jury determined whether Allen or Jackson owned the vehicle. Hence, we return this case to the court of appeals to remand it to the trial court for a new trial to resolve this issue of ownership only.

## II.

### A. Need For Expert Testimony.

Next we address whether expert testimony of industry standards is required to establish the reasonableness of an insurer's conduct in a first-party claim for the breach of an insurer's duty of good faith. We begin by discussing basic principles behind this tort claim.

An insurer must deal in good faith with its insured. *Decker v. Browning–Ferris Indus. of Colorado*, 931 P.2d 436, 443 (Colo.1997). The insurance contract imposes a "quasi-fiduciary" relationship between the insurer and insured that imposes an implied covenant of good faith upon the insurer. *Id.* This special relationship gives rise to a separate action in tort when the insurer breaches its duty of good faith and fair dealing. *Good-*

*son v. American Std. Ins. Co. of Wisconsin*, 89 P.3d 409, 414 (Colo.2004) (discussing the requirements for asserting a claim against an insurer for the breach of the duty of good faith and the damages available).

An insurer may breach its duty of good faith due to the insurer's conduct with third-parties or with first-parties. The third-party context involves claims against the insurer for its alleged misconduct with third-parties asserting claims against the insured. By contrast, the first-party context involves claims against the insurer for its alleged misconduct with its own insured. To assert a claim for the breach of an insurer's duty of good faith, the tort requires proof of a different standard depending upon whether the insurer's conduct is with a third-party or a first-party. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo.1985). In the third-party context, an insured's claim is based on general principles of negligence and requires proof that the insurer acted "unreasonably under the circumstances." *Goodson*, 89 P.3d at 415; *see also Farmers Group Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo.1984).

In a first-party claim, like this one, the insured must prove both that the insurer acted "unreasonably under the circumstances" and that "the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Goodson*, 89 P.3d at 415 (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo.1985)). Because this second element is not relevant to the issues raised on appeal, we do not address it here.

Thus, the next relevant inquiry is whether the insured, the plaintiff, must rely upon expert testimony to establish industry standards to prove that the insurer breached its duty of good faith—that is, that the insurer acted unreasonably.[12]

---

12. Some jurisdictions have concluded that expert testimony of industry standards is not required in actions alleging bad faith against an insurer. *See, e.g., Bergman v. United Serv. Auto. Ass'n*, 742 A.2d 1101, 1107 (Pa.Super.Ct.1999) (holding "expert testimony is not required as a *per se* rule ... in bad faith actions"); *Weiss v. United Fire and Cas. Co.*, 197 Wis.2d 365, 382, 541 N.W.2d 753, 758–59 (1995) (holding "when an insurer's alleged breach of its duty of good faith and fair dealing toward its insured involves facts and circumstances within the common knowledge or ordinary experience of an average juror, an insured need not introduce expert testimony to establish a bad faith claim"); *Palomar Ins. Corp. v. Guthrie*, 583 So.2d 1304 (Ala.1991) (holding expert testimony was not required where jury is capable of determining existence of duty); *Groce v. Fidelity Gen. Ins. Co.*, 252 Or. 296, 448 P.2d 554, 560 (1968) (stating expert testimony is not

The reasonableness of an insurer's conduct is measured objectively based on industry standards in both the first-party and third-party context. *Goodson*, 89 P.3d at 415; *Savio*, 706 P.2d at 1275. Although we have not specifically decided the need for expert testimony to establish what is reasonable under the circumstances, our court of appeals has. It has held that in the third-party context, expert testimony is not required to establish the reasonableness of the insurer's conduct where the standard of care does not entail specialized knowledge or skill beyond that of the average juror.[13] *Surdyka v. DeWitt*, 784 P.2d 819, 822 (Colo.App.1989).

Expert witnesses can provide additional relevant evidence of the standard of care if the standard is not within the common knowledge of the ordinary juror. *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 931 (Colo.1997). We have stated that in tort claims for professional negligence, expert testimony is "often required" to establish the industry standard of care when the standard is not within the common knowledge of ordinary people.[14] *Goodson*, 89 P.3d at 415.

On the other hand, in contexts slightly different than the one presented here, this court and the court of appeals have agreed with the *Surdyka* court's principles that expert testimony is not required where the defendant's standard of care does not require specialized or technical knowledge.[15] Nor is expert testimony required to establish the standard of care when a legislative enactment or administrative rule establishes the standard of care. *Giampapa v. American Family Mut. Ins. Co.*, 919 P.2d 838, 841 (Colo.App.1995) (insurance company employee admitted that statute established standard of care for insurer to pay bills within thirty days), *appealed after remand and rev'd on other grounds*, 64 P.3d 230 (Colo.2003).

But where the legislative enactment or administrative rule is not conclusive of the standard of care, the statute or rule may be used as evidence of the standard of care from

required for jury to know whether insurer acted in good faith or bad faith).

13. American Family attempts to distinguish the holding of *Surdyka* from that of a first-party claim by asserting that in a first-party claim proof of industry standards may only be accomplished through the use of expert testimony. We do not agree with this attempt to distinguish *Surdyka*. In *Savio*, we held that the unreasonableness of an insurer's conduct was to be measured by "proof of the standards of conduct in the industry." 706 P.2d at 1275. The only difference between a first-party and third-party claim was the second element necessary for a first-party claim: that the insured knew or recklessly disregarded the insured's claim. *Savio*, 706 P.2d at 1276.

14. *See Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 81 (Colo.2001) (stating in a negligence claim against a professional, plaintiff must establish conduct that falls below the standard of care appropriate to the profession); *Gerrity*, 946 P.2d at 932 n. 13 (expert testimony is required to determine when conditions would "reasonably permit" the reclamation or restoration of a drilling site and whether drilling site was restored to its original condition "insofar as is practicable"); *Command Communications, Inc. v. Fritz Co., Inc.*, 36 P.3d 182, 189 (Colo.App. 2001) (expert testimony is required to establish standard for business customs brokerage which demands specialized knowledge and skill to determine appropriate classification of customer's

products); and *Burgess v. Mid–Century Ins. Co.*, 841 P.2d 325, 329 (Colo.App.1992)(using expert testimony of customary investigation procedures for determining appropriate medical treatment to establish that the insurer acted in bad faith when it declined coverage).

15. *See Gerrity*, 946 P.2d at 932–33 (notification to surface owner and removal or burial of materials "is not a technical matter requiring evidence of industry practice," nor does tort of trespass require expert testimony of material interference with surface uses to establish prima facie case); *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 210 (Colo.1984) (holding that the standard of care applicable to a reasonable pharmaceutical company marketing product after minimum testing and without a warning does not entail specialized knowledge or skill "unique to a scientific discipline and beyond the knowledge and experience of the average jury"); *Hartman v. Community Responsibility Ctr., Inc.*, 87 P.3d 202, 206 (Colo.App.2003) (expert testimony not required to establish breach of loyalty claim because breach is not governed by particular profession's standard of care); *Oliver v. Amity Mut. Irrigation Co.*, 994 P.2d 495, 497–98 (Colo.App.1999) (expert testimony is not required to establish the standard of care for the design, construction, and maintenance of an irrigation ditch); and *Calvaresi v. National Development Co., Inc.*, 772 P.2d 640, 644 (Colo.App.1988) (expert testimony is not required to establish standard for real estate developers who marketed property above an abandoned coal mine as a residential subdivision).

which the trier of fact may evaluate the defendant's conduct. *Gerrity*, 946 P.2d at 932. In such instances, expert testimony is required to establish the standard of care only if the standard is not within the "common knowledge and experience of ordinary persons." *Id.* For example, statutory safety standards under the Occupational Safety and Health Act, 29 U.S.C. § 653(b)(4) (2001), offered in support of expert testimony may be used as "some indication of the standard of care" owed by the defendant in a negligence claim for failing to follow industry standards in providing safe facilities and equipment. *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1170 (Colo.2002).

We find our reasoning in *Gerrity* instructive for this case. There, the plaintiff claimed that an oil and gas operator engaged in negligent drilling operations in violation of Colorado's administrative rules. *Gerrity*, 946 P.2d at 920–21. The rules required the surface owner's consent for disposal of waste on the site as well as notice about site reclamation. *Id.* at 932. We held that these administrative rules did not overrule the common law rule of reasonable surface use, emphasizing that these administrative rules neither established the standard of care for an operator nor created a private right of action in tort. These rules provided the jury with "valid, but not conclusive, evidence" of the standard of care owed by the operator. And, most importantly here, we held that because the standard of care was within the "common knowledge and experience of ordinary persons," the trier of fact was allowed to determine the legal duty owed to the landowner without the aid of expert testimony. *Id.* at 931.

 Although *Gerrity* concerns the standard of care in a negligence claim, its reasoning applies here. Like the rules in *Gerrity*, the Unfair Claims Practices Act regulates the conduct of the insurance industry but does not create a private right of action.[16] *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370, 1377–78 (Colo.App.1982), *aff'd*, 691 P.2d 1138 (Colo.1984). This Act sets forth standards for when the commissioner of insurance may find that an insurance company is engaged in an unfair or deceptive trade practice. Section 10–3–1104(1)(h) of the Act defines an unfair claims settlement practice as, among other things, refusing to pay claims without conducting a reasonable investigation based on all available information, or not providing a reasonable explanation of a denial of a claim.[17] While the Unfair Claims Practices Act does not establish a standard of care actionable in tort, it may be used as valid, but not conclusive, evidence of industry standards just like the administrative regulations in *Gerrity*. If the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people, then expert testimony is not required. *See Gerrity*, 946 P.2d at 931.

## B. Application.

 Having decided that in some cases expert testimony may not be required, we address whether in this case expert testimony is required to establish what constitutes a reasonable investigation or denial of an insured's claim in order to prove that American Family breached its duty of good faith. We begin by recognizing that whether the standard of care is a matter of common knowledge is committed to the sound discretion of the trial court. *People v. Fasy*, 829 P.2d 1314, 1317–18 (Colo.1992).

---

**16.** The General Assembly has provided for the state regulation of insurance through the enactment of the Unfair Claims Practices Act and limited the power to issue sanctions under the Act to the commissioner of insurance. *Schnacker v. State Farm Mut. Auto. Ins. Co.*, 843 P.2d 102, 104 (Colo.App.1992), *cert. denied* (Jan. 19, 1993).

**17.** Section 10–3–1104(1)(h) states in part:
Unfair claim settlement practices: Committing or performing, either in willful violation of this part 11 or with such frequency as to indicate a tendency to engage in a general business practice, any of the following: ...
(IV) *Refusing to pay claims without conducting a reasonable investigation based upon all available information;* or ...
(XIV) *Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim* or for the offer of a compromise settlement; ...
(emphasis added).

The reasonableness of an insurer's investigation into the underlying events of an automobile insurance claim is not a technical question and does not require additional professional training beyond the knowledge of the average juror. Nor does a determination of what constitutes a reasonable explanation for denying a claim require special knowledge or training. The insurer is corresponding with its insured who is not required to have a particular ability to understand why coverage is denied. Although American Family's employees receive training and handbooks on investigating claims, this does not make expert testimony necessary to establish a standard of care. To hold otherwise would effectively require expert testimony any time a defendant acts pursuant to a manual or industry training.

Therefore, we hold that expert testimony with respect to what constitutes a reasonable investigation or denial of a claim was not needed in this case. Here, the Unfair Claims Practices Act also provided the jury with valid, but not conclusive, evidence of what constitutes a reasonable investigation or denial of a claim. American Family conceded that it had adopted the standards in the Act in its policies and procedures. In the terms of this statute, a reasonable investigation is one that is based upon "all available information." The Act also states that a denial of an insured's claim must have a "basis in the insurance policy" or "applicable law." This evidence of the standard of care could assist the jury in determining whether American Family had acted unreasonably in investigating or denying Allen's claim.

The trial court properly instructed the jury that an insurance company breaches its duty of good faith if it acted unreasonably in either the investigation or denial of Allen's PIP claim, or providing an unreasonable explanation for the denial of the claim.[18] The instructions also incorporated the Unfair Claims Practices Act and allowed the jury to "consider [a] violation [of the Act] in determining whether the defendant acted unreasonably in denying payment of the plaintiff's insurance claim."

Reviewing the record, we find sufficient evidence for the jury to conclude that American Family's investigation and denial of Allen's claim was unreasonable. *Bohrer v. DeHart*, 961 P.2d 472, 476–77 (Colo.1998). Testimony showed that American Family had concluded its investigation without exploring the conflicting statements it received from Jackson and his wife or by talking with Allen. American Family's denial of coverage letters to Jackson and Allen referenced non-existent sections of the policy and contained legal misstatements as a basis for denying her claim.

Based upon the jury instructions and the evidence presented at trial, a reasonable jury could have evaluated American Family's conduct and reached the conclusion that American Family acted unreasonably under the circumstances. Therefore we affirm the court of appeals on this issue.

### Conclusion

For the reasons stated above, we reverse in part and affirm in part and return this case to the court of appeals to remand it to the trial court for a new trial to resolve whether Jackson or Allen owned the truck at the time of the accident. The jury verdict on Allen's tort claim and contract award will stand only in the event on retrial the jury finds that Jackson owned the truck at the time of the accident.

---

**18.** Jury Instruction No. 11 stated in relevant part:

 For the plaintiffs . . . to recover from the defendant . . . on their claim of an unreasonable breach of an insurance contract, you must find all of the following . . .

 1. The defendant acted unreasonably in either (1) investigating plaintiffs' claim for PIP benefits; (2) refusing to pay the claims without conducting a reasonable investigation based upon all available information; or (3) in explaining the basis in the policy used for the denial of benefits;

 2. The defendant knew such conduct was unreasonable or the defendant recklessly disregarded the fact that its conduct was unreasonable; and

 3. The defendant's unreasonable conduct was a cause of the plaintiff's damages. . . .