**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

STEPHANIE TROUT,

　　　　Plaintiff - Appellant,

　　v.

NATIONWIDE MUTUAL
INSURANCE COMPANY, an Ohio
corporation,

　　　　Defendant - Appellee.

No. 07-1369

(D. Colorado)

(D.C. No. 06-cv-00236-EWN-MEH)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

　　　　Plaintiff and appellant Stephanie Trout appeals the district court's grant of

summary judgment to defendant, Nationwide Mutual Insurance Company, in her

action for breach of contract and bad faith breach of insurance contract. We

reverse the judgment in this case and remand the case to the district court for

further proceedings.

---

　　　　[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## BACKGROUND

On December 20, 2002, Trout attended a gathering where Neil Kreyche and Tanya Budnikova were present and consumed alcohol. At some point, Trout got into the back seat of a car owned by Budnikova's father, Vitaly Raysh. Budnikova gave Kreyche permission to drive the car, even though she knew he (Kreyche) had consumed alcohol. The car hit a tree, causing severe injuries to Trout. At the time of the accident, Kreyche was insured under a policy issued to his father by Nationwide. The policy was subject to limits of $100,000 per person and $300,000 per occurrence. Additionally, American Express had issued a policy to Raysh, with a liability limit of $25,000, which insured the car in question.

Both Nationwide and American Express were notified of the accident. On February 11, 2003, Trout's lawyer, James Leventhal, called Nationwide, told it about the severe injuries Trout had sustained in the accident, and informed Nationwide that Trout had spent twenty-four days in the hospital and incurred over $300,000 in medical bills so far.

In the fall of 2003, Trout sued Kreyche and the owner of the car, Tatyana Budnikova (Tanya's mother), in Colorado state court (the "State Action"), alleging that Kreyche and Tanya Budnikova had consumed alcohol before the accident and that Budnikova had given permission to Kreyche to drive the car in which the accident occurred, even though she knew he had consumed alcohol.

Trout alleged negligence, negligent entrustment, negligence *per se*, and wanton and reckless disregard.[1]  Kreyche, in turn, sought defense and indemnity coverage from Nationwide.  American Express retained Gregory Giometti and Jon Halaby to represent Kreyche in the State Action.

On January 13, 2004, Giometti and Halaby had a conference call with Leventhal, in which Leventhal requested that either Giometti or Halaby let Leventhal know "if Mr. Kreyche's insurance company is going to offer the $100,000 you say is the limit of coverage for him for this accident."  Letter 1/13/04, Appellant's App. at 91.  Leventhal also asked if there was an umbrella policy, business policy or any other kind of policy that might cover the accident.  The next day, January 14, 2004, Halaby conveyed by letter Leventhal's request to the Nationwide representative handling the State Action.  Halaby's letter specifically stated that "Leventhal made it clear in the telephone conference that his request that we inform him if Allied [Nationwide] will be offering the $100,000 in coverage does not constitute a demand to settle this case."  Letter 1/14/04, id. at 99.

---

[1]Trout alleged that "she suffered severe permanently disabling and life-altering injuries in the accident, including past and future pain and suffering, loss of enjoyment of life, loss of her ability to enjoy a full and useful life, physical impairment, disability, loss of earnings, loss of earning capacity and loss of home services, as well as emotional distress."  Complaint at ¶ 8, Appellant's App. at 20, 31.

On January 15, Leventhal agreed to an extension until January 22, 2004, to "let [him] know whether the insurance company is going to offer its $100,000 policy limits." Letter 1/15/04, id. at 102. On January 22, 2004, Giometti wrote to Leventhal, offering Nationwide's $100,000 policy limit, subject to six conditions. The conditions were: (1) a release of Trout's claims against Kreyche, Budnikova and their respective parents; (2) Trout's agreement to defend, hold harmless, and indemnify Kreyche, Budnikova and their respective parents in any action brought by a third party; (3) Trout's warrant that she had not assigned any portion of her claim to anyone other than Kaiser Permanente and agreement to release and hold harmless Kreyche, his parents and Nationwide from any sums awarded for restitution in the State Action; (4) dismissal of the State Action with prejudice; (5) waiver of subrogation rights by Kaiser Permanente, Trout's medical insurance provider; and (6) waiver of subrogation by any underinsured motorist insurance carrier. Letter 1/22/04, id. at 103-04. Additionally, the letter stated that another insurer of Kreyche, American Express, had offered to pay its limit of $25,000.

On January 29, 2004, the Kreyche family counsel told Giometti that the Kreyches had no additional insurance covering Kreyche for the accident. On January 30, Giometti relayed this information to Trout's counsel. In a letter dated February 11, 2004, Trout rejected Nationwide's offer of the coverage limit, with its six conditions, stating that she did not accept the "improperly conditioned" offer and would pursue the matter against Kreyche because of Nationwide's "bad

-4-

faith posture." Letter 2/11/04, id. at 110-11. Trout's counsel further explained that "following entry of judgment against Mr. Kreyche, which will likely be well in excess of Nationwide's policy limits, Mr. Kreyche will look to his insurance carrier for failing to protect him from such a judgment." Id.

In April 2005, the State Action went to trial. Trout prevailed and was awarded $640,000 in damages, plus pre- and post-judgment interest and costs. Additionally, a restitution judgment was entered in a criminal action against Kreyche in the amount of $170,138 to be paid to Kaiser Permanente. After entry of judgment in the State Action, Nationwide tendered $100,000 to Trout in partial satisfaction of the judgment. Nationwide has refused "to pay any additional sums to which Trout is entitled as a result of the judgment." Compl. ¶ 17, id. at 21, 32. Kreyche did not have sufficient assets to satisfy the balance on the judgment. Accordingly, he and Trout entered into an agreement pursuant to which Kreyche executed a promissory note requiring him to make certain payments on the outstanding balance, and he assigned to Trout "all rights, title, and interest . . . against Nationwide for collection on the unpaid portion of the judgment entered in the [State Action], including the right to prosecute those claims in a civil action and retain the proceeds from such an action." Complaint ¶ 20, id.

Accordingly, Trout, as the assignee of Kreyche's rights against Nationwide resulting from the excess judgment entered in the State Action, filed this action asserting claims against Nationwide for breach of contract and bad faith breach of

contract based upon Nationwide's failure to settle Trout's claims in the State Action. Trout argued that Nationwide's offer to pay the $100,000 coverage limit subject to the six conditions was wrongful and in bad faith because at the time Nationwide made the offer, it knew that (1) Trout's injuries were catastrophic; (2) any verdict in Plaintiff's favor in the State Action would likely be greatly in excess of the $100,000 limit; and, therefore, (3) Kreyche faced personal liability for the balance between the coverage limit and any verdict in Trout's favor. On February 10, 2006, Nationwide removed the case to federal court on the basis of diversity of citizenship.

On October 10, 2006, Nationwide moved for summary judgment, arguing that it could not have settled the claims because it never had an opportunity to settle for the Policy coverage limit.[2] The district court granted Nationwide's motion, reasoning as follows:

> In Colorado, "[i]t is well established that the law imposes upon the insurer the duty to exercise diligence, intelligence, good faith, and honest and conscientious fidelity to the common interest of the

---

[2]Nationwide argued in its motion for summary judgment as follows:

> The crux of this case is the simple fact that Nationwide never had an opportunity to settle the [State] Action within its policy limits. [Trout] never made an offer to settle within Nationwide's limits. Furthermore, when Nationwide offered its policy limits [Trout] not only rejected the offer but also deliberately and immediately foreclosed further negotiations so as to set up Nationwide for this bad faith action.

Defendant's Mot. for Summ. J. at 9, Appellant's App. at 68.

insured as well as itself in determining whether to accept or reject an offer of settlement." As a matter of course and logic, for this duty to arise, the insurer must have received an offer of settlement. Accordingly, the court first examines whether [Trout] made an offer to settle her case within the Policy limits. . . .

It is undisputed that on January 13, 2004, [Trout's] counsel asked [Nationwide] to "let [him] know . . . if [Nationwide was] going to offer the $100,000 [Nationwide said] is the limit of coverage available" under the Policy. Further, on January 15, 2004, [Trout's] counsel sent a letter to [Nationwide] concerning the Policy limit, which *in toto* read as follows:

> This letter follows our phone conversation today, January 15, 2004, during which [Nationwide] requested until January 22, 2004 to let me know whether [Nationwide] is going to offer its $100,000 [P]olicy limits. I agreed to [the] requested extension.
>
> [Counsel] also discussed the production of insurance policies. I would like all insurance policies which the Kreyche's had in effect at the time of the accident, so we can make our own determination of coverage. Thanks very much.

To the extent [Trout] bases her claims on [Nationwide's] refusal to accept this purported "express demand for [P]olicy limits," [Trout] is hopelessly misguided. "An offer is the manifestation of willingness to enter into a bargain so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." But in this case, the court need not turn to legal platitudes. Neither letter conveys any intention to settle the case. Reasonable minds could not disagree on this issue.

. . . .

. . . In this case, because [Trout] made no offer of settlement, this court cannot find that [Nationwide's] failure to accept any such offer was a breach or an act of bad faith.

Still, the duty to settle does not hinge on the existence of a settlement offer from a plaintiff. Accordingly, the court turns to the issue of whether [Nationwide's] imposition of conditions on its offer of the Policy limit was a breach of its duty to settle or an act of bad

faith. . . . The court finds [Nationwide's] offer to be a sufficient settlement attempt.

Order at 8-11, Appellant's App. at 360-63 (citations omitted).

Turning to Trout's allegation of bad faith, the district court first observed that, "[t]o establish the tort of bad faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness." Order at 11, id. (citing Pham v. State Farm Mut. Ins. Co., 70 P.3d 567, 572 (Colo. Ct. App. 2003)). The court went on to find, "[f]irst, [Trout] has not created doubt as to the reasonableness of [Nationwide's] offer. . . . Moreover, even assuming [Trout] has raised an issue of fact as to whether [Nationwide] acted unreasonably by imposing conditions on its offer of the Policy limit, she has wholly failed to present argument or evidence as to whether [Nationwide] did so either knowingly or recklessly disregarding its purported unreasonableness.[] Because [Trout] has failed to raise an issue of fact concerning the fundamental elements of her claims, [Nationwide] is entitled to summary judgment on same." Id. at 11-12. The court accordingly granted summary judgment in favor of Nationwide.

This appeal followed, in which Trout posits the issue as: "In granting summary judgment in Nationwide's favor, did the district court err by applying the standard for a first-party insurance bad faith claim in a third-party case, ignoring evidence that raised genuine issues of material fact regarding

-8-

Nationwide's unreasonable conduct, and engaging in improper fact-finding?" Appellant's Op. Br. at 2. We agree with Trout, and we therefore reverse and remand this case for further proceedings.

## DISCUSSION

"We review the district court's grant of summary judgment de novo, using the same legal standard applied by the district court." Adair Group, Inc. v. St. Paul Fire and Marine Ins. Co., 477 F.3d 1186, 1187 (10th Cir. 2007). Thus, "[s]ummary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

As indicated, Trout argues that the district court erred in utilizing the first-party bad faith standard for analyzing Nationwide's conduct, rather than the third-party standard. Nationwide concedes this was error, but argues it was harmless. We agree with both parties that the district court erred, and we conclude that the error was not harmless.

"An insurer may breach its duty of good faith due to the insurer's conduct with third-parties or with first-parties." Am. Fam. Mut. Ins. Co. v. Allen, 102 P.3d 333, 342 (Colo. 2004). A third-party situation "involves claims against the insurer for its alleged misconduct with third-parties asserting claims against the

-9-

insured." Id. A first-party situation, by contrast, "involves claims against the insurer for its alleged misconduct with its own insured." Id. Accordingly, "[t]o assert a claim for the breach of an insurer's duty of good faith, the tort requires proof of a different standard depending upon whether the insurer's conduct is with a third-party or a first-party." Id.

This case involves a third-party claim, inasmuch as the allegation is that Nationwide acted in bad faith towards a third party (Trout) in connection with her claim against Nationwide's insured, Kreyche. "In the third-party context, an insured's claim is based on general principles of negligence and requires proof that the insurer acted 'unreasonably under the circumstances.'" Id. (quoting Goodson v. Am. Standard Ins. Co., 89 P.3d 409, 415 (Colo. 2004)); see also Farmers Group, Inc. v. Trimble, 691 P.2d 1138, 1142 (Colo. 1984). By contrast, first-party claims require an additional element: "[i]n a first-party claim, . . . the insured must prove both that the insurer acted 'unreasonably under the circumstances' and that 'the insurer either knowingly or recklessly disregarded the validity of the insured's claim.'" Id. (quoting Goodson, 89 P.3d at 415).

The district court, however, in granting summary judgment to Nationwide on Trout's bad faith claim, applied a first-party bad faith standard: citing Pham, indisputably a first-party bad faith case, the district court held that "[t]o establish the tort of bad faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of

-10-

its unreasonableness." Order at 11, Appellant's App. at 363. The district court then concluded that Trout "has not created doubt as to the reasonableness of [Nationwide's] offer." Order at 11-12, id. at 363-64. The court continued, "[m]oreover, even assuming [Trout] has raised an issue of fact as to whether [Nationwide] acted unreasonably by imposing conditions on its offer of the Policy limit, she has wholly failed to present argument or evidence as to whether [Nationwide] did so either knowing or recklessly disregarding its purported unreasonableness." Order at 12, id. at 364. Thus, while Nationwide is correct that the first element of a first-party claim (unreasonableness) is the same as the sole element in a third-party claim, the second element in a first-party claim (knowing or recklessly disregarding the unreasonableness) is different and distinct, and the district court's rationale relied, in part, on this different and distinct element. We therefore simply cannot say that the district court's reliance on the wrong legal standard was harmless.

Furthermore, for purposes of this case on remand, we make the following observations regarding third-party bad faith claims. "Third-party bad faith arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." Goodson, 89 P.3d at 414; see also Nunn v. Mid-Century Ins. Co., No. 06CA0954, 2008 WL 5173619, at *2 (Colo. App. 2008) ("[A]n insurer that unreasonably refuses to settle a claim against its insured, or unreasonably delays

in settling such a claim, may be liable to its insured for bad faith breach of the insurance contract."). Additionally, "[t]he reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards. The aid of expert witnesses is often required in order to establish objective evidence of industry standards." Id. at 415.[3]

In this case, Trout submitted affidavits and accompanying reports of two experts in the field of insurance claims and applicable industry standards, Michael T. McConnell and Richard B. Caschette. McConnell testified that, after Nationwide learned of the severity of Trout's injuries, it "was on notice that there was a very substantial excess exposure for the Kreyches. Under these circumstances, a reasonable insurer would have proceeded to promptly investigate the case and promptly confirm whatever information it regarded as material to the decision to pay policy limits." Letter 8/10/06 at 3-4, Appellant's App. at 241-42. Further, "by September 23, 2003, Nationwide knew or should have known Trout's claim clearly and substantially exceeded its limits and put itself in a position to promptly take advantage of an opportunity to settle for that amount. It did not do so." Letter 8/10/06 at 5, id. at 243. Additionally, McConnell opined that not all

---

[3]We note, however, that the Colorado courts have stated that "in the third-party context, expert testimony is not required to establish the reasonableness of the insurer's conduct where the standard of care does not entail specialized knowledge or skill beyond that of the average juror." Am. Fam. Mut. Ins. Co. v. Allen, 102 P.3d 333, 343 (Colo. 2004). We express no opinion on the necessity of expert testimony in this case.

of the six conditions Nationwide imposed on its policy limit offer to Trout were reasonable. We accordingly question the district court's conclusion that Trout had "not created doubt as to the reasonableness of [Nationwide's] offer." Order at 11-12, id. at 363-64. Indeed, the reasonableness of Nationwide's conduct is a quintessential jury question which we would typically expect to survive a motion for summary judgment.

In sum, the district court's legal error in utilizing the wrong bad faith standard, combined with the fact that the record appears to demonstrate the existence of disputed issues of material fact as to the reasonableness of Nationwide's conduct in this case, compel the reversal of summary judgment and a remand for further proceedings consistent herewith.

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment and REMAND this case for further proceedings.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge